## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
In re                                                        :   Chapter 11
                                                             :
WASHINGTON MUTUAL, INC., et al.,[1]                          :   Case No. 08-12229 (MFW)
                                                             :
            Debtors.                                         :   Jointly Administered
------------------------------------------------------------ x
JPMORGAN CHASE BANK, NATIONAL                                :
ASSOCIATION,                                                 :
                                                             :   No. 1:09-cv-00734-GMS
            Plaintiff and Counter Defendant,                 :
                                                             :   Adv. Proc. No. 09-50551
       v.                                                    :
                                                             :
WASHINGTON MUTUAL, INC. AND                                  :
WMI INVESTMENT CORP.,                                        :
                                                             :
            Defendants and                                   :
            Counterclaimants.                                :
------------------------------------------------------------ x
```

## ANSWERING BRIEF OF APPELLEE DEBTORS

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)
Neil R. Lapinski (DE Bar No. 3645)
Shelley A. Kinsella (DE Bar No. 4023)
ELLIOTT GREENLEAF
1105 North Market Street, Suite 1700
Wilmington, Delaware 19801
Telephone:  (302) 384-9400
Facsimile:  (302) 384-9399
Email:  rxza@elliottgreenleaf.com
Email:  nrl@elliottgreenleaf.com
Email:  sak@elliottgreenleaf.com

(Additional Counsel Listed on Signature Page)

*Special Litigation and Conflicts Counsel to*
*Washington Mutual, Inc. and WMI Investment Corp.*

March 1, 2010

---

[1]     The Debtors in these Chapter 11 cases and the last four digits of each Debtor's federal tax identification numbers are: (i) Washington Mutual, Inc. (3725) and (ii) WMI Investment Corp. (5395). The Debtors continue to share their principal offices with the employees of JPMorgan Chase located at 1301 Second Avenue, Seattle, Washington 98101.

## TABLE OF CONTENTS

**Page**

STATEMENT OF THE CASE ...................................................................................1

STATEMENT OF FACTS ........................................................................................3

    A.    The DC Action...........................................................................................3

    B.    The Bankruptcy Proceedings...................................................................4

    C.    The Bankruptcy Court's Denial of JPMC's Stay and Dismissal Motions ..............4

ARGUMENT.............................................................................................................6

II.    Debtors Are Entitled To Pursue Their Claims Against JPMC ...........................6

    A.    The Third Circuit Has Repeatedly Held That FIRREA Does Not Bar Claims Against Private Banks Concerning Assets That Are Not In Receivership ...........................................................................................6

    B.    JPMC Is Attempting To Misuse FIRREA To Secure An Advantage That Congress Never Intended..................................................................10

III.    The Bankruptcy Court Was Right To Retain Its Exclusive Jurisdiction Over the Adversary Proceedings ...........................................................................14

IV.    As JPMC Understood, At Least Until It Obtained An Unfavorable Result, The Bankruptcy Court Had Authority To Decide JPMC's Motion ..........................15

    A.    JPMC Cannot Unilaterally Divest the Bankruptcy Court of Jurisdiction by Filing A Faulty Interlocutory Appeal ...................................................15

    B.    JPMC Has No Jurisdictional Basis For Its Interlocutory Appeals ........................17

    C.    Even If There Were Jurisdiction Over JPMC's Appeals, The Bankruptcy Court Would Have Been Right To Proceed With The Adversary Proceedings.............................................................................................19

CONCLUSION ........................................................................................................20

## TABLE OF AUTHORITIES

**Page**

### Cases

*In re All Seasons Kitchen, Inc.*,
145 B.R. 391 (Bankr. D. Vt. 1992)................................................................................14

*America First Federal, Inc. v. Lake Forest Park, Inc.*,
198 F.3d 1259 (11th Cir. 1999).....................................................................................9

*American National Insurance Co. v. FDIC*,
No. 3:09-cv-00044 (slip op.) ........................................................................................10

*Apostol v. Gallion*,
870 F.2d 1335 (7th Cir. 1989).....................................................................................19

*Auction Co. of America v. F.D.I.C.*,
141 F.3d 1198 (D.C. Cir. 1998)....................................................................................12

*Bell Atlantic-Pa., Inc. v. Pa. Public Utility Commission*,
273 F.3d 337 (3d Cir. 2001).........................................................................................17

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
511 U.S. 863 (1994) ......................................................................................................17

*DiSibio v. Mission National Bank*,
127 Fed. Appx. 950 (9th Cir. 2005) ..............................................................................9

*F.D.I.C. v. McFarland*,
243 F.3d 876 (5th Cir. 2001).......................................................................................10

*In re First Republicbank Corp.*,
1990 Bankr. LEXIS 2840 (Bankr. N.D. Tex. June 19, 1990) ..................................13

*In re Ford Motor Co.*,
110 F.3d 954 (3d Cir. 1997).........................................................................................19

*Griggs v. Provident Discount Co.*,
459 U.S. 56 (1982) ........................................................................................................16

*Gross v. Bell Savings*,
974 F.2d 403 (3d Cir. 1992)............................................................................7, 8, 10, 19

*Henrichs v. Valley View Development*,
474 F.3d 609 (9th Cir. 2007)........................................................................................10

*Hoxeng v. Topeka Broadcomm, Inc.*,
911 F. Supp. 1323 (D. Kan. 1996)...............................................................................10

*Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.*,
43 F.3d 843 (3d Cir. 1994) ............................................................1, 6, 8, 9, 10, 19

*INS v. St. Cyr,*
  533 U.S. 289 (2001) .................................................................................................12

*Isaacs v. Hobbs Tie & Timber Co.,*
  282 U.S. 734 (1931) .................................................................................................14

*JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.,*
  Adv. Proc. No. 09-50551 (MFW) .............................................................................4

*Lauro Lines S.R.L. v. Chasser,*
  490 U.S. 495 (1989) ...................................................................................3, 17, 18

*Mondrow v. Fountain House,*
  867 F.2d 798 (3d Cir. 1989) ...............................................................................15, 16

*National Union Fire Ins. Co. v. City Sav., F.S.B.,*
  28 F.3d 376 (3d Cir. 1994) .......................................................................................12

*In re Norvergence, Inc.,*
  No. 08-1910, 2008 WL 5136706 (D.N.J. Dec. 5, 2008) .........................................17

*O'Melveny & Myers v. F.D.I.C.,*
  512 U.S. 79 (1994) ...................................................................................................13

*In re Parker N. America Corp.,*
  24 F.3d 1145 (9th Cir. 1994)(D)................................................................................14

*Rosa v. RTC,*
  938 F.2d 383 (3d Cir. 1991) .................................................1, 6, 7, 8, 10, 12, 14, 19

*Ruby v. Sec'y of U.S. Navy,*
  365 F.2d 385 (9th Cir. 1966) ...............................................................................16, 17

*Team Bank v. Barfield,*
  145 F.R.D. 69 (N.D. Tex. 1992)................................................................................10

*Trinsey v. K. Hovnanian at Upper Merion, Inc.,*
  841 F. Supp. 694 (E.D. Pa. 1994) ..............................................................................9

*In re Truong,*
  513 F.3d 91 (3d Cir. 2008) .......................................................................................17

*U.S. v. Hitchmon,*
  602 F.2d 689 (5th Cir. 1979) ....................................................................................16

*U.S. v. Leppo,*
  634 F.2d 101 (3d Cir. 1980) .................................................................................15, 19

*U.S. v. Sollenberger,*
  2007 U.S. Dist. LEXIS 85627 (M.D. Pa. Nov. 20, 2007) .......................................16

*Van Cauwenberghe v. Biard,*
  486 U.S. 517 (1988) .................................................................................................17

*Venen v. Sweet,*
    758 F.2d 117 (3d Cir. 1985) ................................................................................ 16

*Village of Oakwood v. State Bank & Trust Co.,*
    539 F.3d 373 (6th Cir. 2008) ................................................................................ 9

*Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.,*
    Adv. Proc. No. 09-50934 (MFW) .......................................................................... 4

*WMI and WMI Investment v. FDIC,*
    No. 09-00533 (D.D.C. Mar. 20, 2009) .................................................................. 4

## **Statutes**

12 U.S.C. § 1821(d)(13)(D)..................................................................1, 5, 6, 7, 11, 10, 13

12 U.S.C. § 1821(d)(13)(D)(i)............................................................................7, 14

12 U.S.C. § 1821(d)(13)(D)(ii)..............................................................................7

12 U.S.C. § 1821(d)(6) ..........................................................................................11

28 U.S.C. § 1334(e)(1) ..........................................................................................14

28 U.S.C. § 158(a)(1) .......................................................................................3, 17

## **Rules**

U.S. Ct. of App. 9th Cir. Rule 36-3 ........................................................................9

## STATEMENT OF THE CASE

This is the second of two interlocutory appeals that JPMC is pursuing on the identical issue – namely, whether FIRREA somehow bars claims brought against a private bank concerning assets that are not in receivership.  In its first appeal, JPMC challenged the Bankruptcy Court's denial of its motion to stay two adversary proceedings in favor of an action against the FDIC in Washington, D.C. (the "Motion to Stay"), and, in its current appeal, JPMC challenges the Bankruptcy Court's denial of its motion to dismiss Debtors' counterclaims in one of those adversary proceedings (the "Motion to Dismiss Debtors' Counterclaims").  By rehashing the same flawed arguments in one round of appellate briefing after another, all before any final judgment below, JPMC highlights the wisdom of the rule against interlocutory appeals.  Such appeals are inefficient, they divert resources that should be focused on the pending litigation, and, in this instance, they are unnecessarily consuming the resources of a bankrupt debtor working to formulate a plan for the benefit of estate creditors.  JPMC is not entitled to bring this appeal, and, like all litigants, it must await final judgment below.

JPMC is also wrong on the merits.  It is undisputed that Debtors' claims against JPMC concern assets that are not currently in receivership.  As the Bankruptcy Court recognized, JPMC cannot invoke 12 U.S.C. § 1821(d)(13)(D) in order to shield itself from such claims.  Indeed, the Third Circuit has repeatedly rejected JPMC's position that FIRREA bars claims against a successor bank, like JPMC, concerning assets purchased out of receivership. *See Rosa v. RTC*, 938 F.2d 383 (3d Cir. 1991); *Hudson United Bank v. Chase Manhattan Bank of Conn., N.A.*, 43 F.3d 843 (3d Cir. 1994).  JPMC ignores this binding precedent, and asks the Court to rely instead on inapposite decisions from outside this jurisdiction.  But the Bankruptcy Court was of course correct to apply the settled law of the Third Circuit.  That law is faithful to the language and goals of FIRREA, moreover, which do not include shielding private banks from liability on valid claims.

With no sound basis for refuting the Bankruptcy Court's decision to apply FIRREA as directed by the Third Circuit, JPMC contends that the Bankruptcy Court had no authority even to decide the issue. In other words, JPMC is claiming that the Bankruptcy Court erred by ruling on a motion that JPMC asked it to decide. Indeed, JPMC filed its Motion to Dismiss Debtors' Counterclaims, and, after an unfavorable ruling, JPMC announced, in a so-called "Divestiture of Jurisdiction," that the Bankruptcy Court lacked jurisdiction over JPMC's motion in the first place. It is hard to fathom a more transparent and dubious litigation tactic. Surely JPMC would have had no problem accepting the Bankruptcy Court's jurisdiction had it ruled in JPMC's favor by dismissing Debtors' counterclaims. Unsurprisingly, the Bankruptcy Court rejected JPMC's self-serving "Divestiture of Jurisdiction," rightly deeming JPMC's position "frivolous."

Finally, JPMC tries to bolster its faulty arguments by insinuating that the district court in Washington D.C. (the "DC Court") has expressed agreement with JPMC's interpretation of FIRREA. That is not correct. JPMC sought an end-run around the Bankruptcy Court's decision to retain jurisdiction over the Adversary Proceedings by asking the DC Court, a short time after the Bankruptcy Court's ruling, to adjudicate the same assets underlying those claims on an expedited basis. The DC Court declined, reasoning that it would be "unseemly" to revisit issues that the Bankruptcy Court had already decided. Thus, far from vindicating JPMC's interpretation of FIRREA (or its strategy of reacting to an unfavorable ruling in the Bankruptcy Court by seeking a more favorable result elsewhere), the DC Court stayed the DC Action pending resolution of the bankruptcy proceedings. The Bankruptcy Court is moving forward with those proceedings, and

JPMC should not be permitted to disrupt that process with a series of premature and meritless interlocutory appeals.[2]

## STATEMENT OF FACTS

As a result of its decision to file repeated interlocutory appeals, JPMC's Statement of Facts is nearly identical to the Statement of Facts in its brief in support of its Appeal from the Bankruptcy Court's denial of its Motion to Stay. (Compare 1:09-cv-00734-GMS [D.I. 23, at 6-10] with 1:09-cv-00615-GMS [D.I. 22, at 5-8]). To avoid similar redundancy, Debtors incorporate by reference the "Statement of Facts" in their Opposition to JPMC's Appeal from the Bankruptcy Court's Denial of the Motion to Stay (1:09-cv-00615-GMS [D.I. 33, at 5-8]), and offer a condensed background section here.

**A.** The DC Action

On September 25, 2008, the Director of the Office of Thrift Supervision (the "OTS") placed Washington Mutual Bank ("WMB") into receivership and appointed the FDIC as receiver. On the same day, the FDIC sold substantially all of WMB's assets to JPMC for $1.88 billion, pursuant to the Purchase and Assumption Agreement Whole Bank, dated September 25, 2008 (the "P&A Agreement"). Debtors subsequently filed a proof of claim with the FDIC pursuant to FIRREA, which the FDIC denied in a one-page notice of disallowance on January 23, 2009. Debtors filed a Complaint in the DC District Court on March 20, 2009, challenging the FDIC's disallowance of

---

[2]    In a section of its brief captioned "Basis of Appellate Jurisdiction," JPMC claims that this appeal is authorized by the collateral order doctrine and 28 U.S.C. § 158(a)(1). As Debtors demonstrate in their Opposition to JPMC's Motion for Leave to Appeal, and in Section IV, *infra*, JPMC is wrong. Section 158(a)(1) does not apply as there has been no "final judgment" below – both Adversary Proceedings are ongoing. Also, the collateral order doctrine does not apply where a party claims, as JPMC claims, that it is being sued in the wrong court. *See Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 500 (1989).

claims. *WMI and WMI Investment v. FDIC*, No. 09-00533 (D.D.C. Mar. 20, 2009), (the "DC Action"). Debtors have not asserted claims against JPMC in the DC Action.

**B.**   The Bankruptcy Proceedings

On September 26, 2008, Debtors each commenced a voluntary case pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). There are two relevant adversary proceedings pending. First, on March 24, 2009, JPMC filed an action against Debtors asserting claims to assorted assets that JPMC allegedly purchased under the P&A Agreement. *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc. et al.*, Adv. Proc. No. 09-50551 (MFW) (the "JPMC Adversary Proceeding"). On May 29, 2009, Debtors filed an answer and counterclaims asserting, among other things, claims for monetary relief through the avoidance of potentially more than $10 billion in Debtors' assets fraudulently or preferentially transferred to JPMC prior to the commencement of the Debtors' chapter 11 cases, as well as claims for assets that rightfully belong to Debtors and were never transferred to JPMC under the P&A Agreement. Second, on April 27, 2009, Debtors filed an action against JPMC seeking to recover approximately $4 billion in Debtors' deposits, which JPMC expressly assumed under the P&A Agreement. *Washington Mutual, Inc. et al. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW) (the "Turnover Action," and with the JPMC Adversary Proceeding, the "Adversary Proceedings"). JPMC's motion to dismiss the Turnover Action was denied on June 24, 2009, and now pending before the Bankruptcy Court is Debtors' motion for summary judgment, which has been fully briefed and argued.

**C.**   The Bankruptcy Court's Denial of JPMC's Stay and Dismissal Motions

On June 1, 2009, JPMC and the FDIC filed motions with the Bankruptcy Court to stay the Adversary Proceedings on grounds that the court lacks jurisdiction over those proceedings under FIRREA Section 1821(d)(13)(D). The Bankruptcy Court denied the motions at the June 24 Hearing. On July 10, JPMC and the FDIC filed motions for leave to appeal (transmitted to this Court). The

4

FDIC also filed a motion seeking certification for direct appeal to the Third Circuit. Debtors have filed briefs opposing those motions both because there is no jurisdiction for interlocutory appeal and because the Bankruptcy Court correctly adhered to the Third Circuit's construction of FIRREA.[3]

JPMC filed its Motion to Dismiss Debtors' Counterclaims in the JPMC Adversary Proceeding on June 18, 2009, repeating its argument that Debtors' claims were barred under Section 1821(d)(13)(D). JPMC argued its motion on August 24, and the Bankruptcy Court denied the motion orally that day and by written order on September 14, 2004. On September 18, 2009, JPMC filed a "Notice of Divestiture of Jurisdiction Pending Appeals," "explain[ing] to the court" that it had been stripped of jurisdiction by JPMC's appeal on July 10, 2009 from the denial of the Motion to Stay and that the Bankruptcy Court therefore had no authority to decide the Motion to Dismiss Debtors' Counterclaims, despite the fact that JPMC had presented that motion for argument. At a hearing on September 25, 2009, the Bankruptcy Court rejected this absurd position both because JPMC had no jurisdictional basis for an interlocutory appeal from the denial of the Motion to Stay, and because JPMC's appeal was wrong on the merits. JPMC filed its second interlocutory appeal that day, this time from the denial of its Motion to Dismiss the Counterclaims.

---

[3]    On July 27, 2009, shortly after the Bankruptcy Court decided to retain jurisdiction over the Adversary Proceedings, Debtors moved to stay the DC Action to avoid the inefficiency of having two matters involving overlapping issues proceed at once. Rather than agreeing to a stay and awaiting resolution of its appeals before this Court, JPMC, having intervened and filed counterclaims that mirror the claims it first asserted in the JPMC Adversary Proceeding, opposed Debtors' motion and urged the DC Court, at oral argument on November 4, 2009, to render an expedited decision disposing of the very assets as to which the Bankruptcy Court had asserted jurisdiction. The DC Court reasoned that it would be "unseemly" for it to rule on matters before the Bankruptcy Court, and, in a written opinion on January 7, 2010, granted Debtors' motion and stayed the DC Action pending resolution of the bankruptcy proceedings. 11/4/09 DC Court Hearing Tr. (A800); 1/7/10 DC Court Order (A893-99).

## **ARGUMENT**

**II.**   Debtors Are Entitled To Pursue Their Claims Against JPMC

    **A.**   The Third Circuit Has Repeatedly Held That FIRREA Does Not Bar Claims Against Private Banks Concerning Assets That Are Not In Receivership

JPMC urges the Court to apply the "plain language" of 12 U.S.C. § 1821(d)(13)(D). (1:09-cv-00734-GMS [D.I. 23, at 10-14]). That is exactly what the Bankruptcy Court did by adhering to the Third Circuit's interpretation of that language in repeated decisions. *See Rosa*, 938 F.2d at 393; *Hudson*, 43 F.3d at 847 n.10, 852. As Debtors detailed in their Opposition to JPMC's Appeal from the Bankruptcy Court's Denial of the Motion to Stay, the Third Circuit in *Rosa* held that Section 1821(d)(13)(D) does not bar an action against a successor bank concerning assets that are purchased out of receivership through a P&A Agreement. *Rosa*, 938 F.2d at 393. In *Hudson*, the Third Circuit reaffirmed its *Rosa* holding, interpreting Section 1821(d)(13)(D) to apply only to "claims against failed institutions" or against "the receiver of such institutions." 43 F.3d at 847 n. 10. That does not describe Debtors' claims against JPMC, a private bank that is not in receivership, and the Bankruptcy Court correctly held that FIRREA does not apply here.[4]

In *Rosa*, plaintiffs were participants in the pension plan of a failed bank, City Federal Savings Bank ("City Federal"), the assets of which were purchased first by City Savings Bank, F.S.B. ("City Savings Bank"), which was subsequently placed into receivership with the Resolution Trust Corporation ("RTC"), and then by City Savings F.S.B. ("City Savings"), a successor bank that was

---

[4]   JPMC oddly reports that Debtors "concede" that the assets underlying certain of their claims "*were* the property of WMB that the FDIC-Receiver sold to" JPMC. (1:09-cv-00734-GMS [D.I. 23, at 10-11] (emphasis added).) But that is the point – those assets are not now in receivership, and, as in *Rosa*, Debtors are entitled to pursue their claims against a purchasing and assuming successor bank. Furthermore, JPMC ignores that many of Debtors' claims concern assets that belonged to WMI, not WMB, and were therefore *never in receivership*. In any event, it is undisputed that none of the assets at issue in this case are currently in receivership, which is precisely why FIRREA does not apply.

placed into conservatorship, but not receivership. *Id.* at 388, 390. The Court held that plaintiffs' claims seeking plan contributions were barred as against City Federal and City Savings Bank, because those entities were "depository institutions for which the RTC had been appointed receiver," but not as against City Savings, because City Savings, like JPMC here, was not a depository institution for which the RTC had been appointed receiver. *Id.* at 391. The *Rosa* Court analyzed the language of both prongs of Section 1821(d)(13)(D):

> We do not believe [claims against the successor bank] fall under [§ 1821(d)(13)(D)(i)] because they seek neither payment from nor a determination of rights with respect to the assets of a depository institution for which RTC has been appointed receiver . . . . Nor does [§ 1821(d)(13)(D)(ii)] bar these claims. This is so because we construe the 'relating' language of that clause to refer to claims against the very institution whose acts are challenged, which must be an institution for which RTC has been appointed receiver.

*Id.* at 394; *see also id.* at 392 ("The language of the bar simply states that it applies when there is an institution for which RTC 'has been' appointed receiver. Thus the issue at bar is whether, at the time the case came before the district court, RTC had been appointed receiver of the institutions . . . . At the time the complaint was filed, [the successor bank] was in conservatorship, not receivership. Thus, [the successor bank] was not then a depository institution 'for which the Corporation has been appointed receiver.'").[5]

---

[5]     Again, the Third Circuit applied identical reasoning in *Gross v. Bell Savings*, 974 F.2d 403 (3d Cir. 1992). The plaintiffs there sought an injunction requiring the RTC to release pension funds that were held either at a bank for which the RTC had been appointed receiver or at a purchasing and assuming bank for which the RTC was conservator. *Id.* at 406 n. 7. The Court declined to enjoin the RTC, relying on a FIRREA provision that prohibits courts from enjoining acts by the RTC, whether in its role as receiver or conservator. The Court noted that, in light of the factual confusion as to "whether it is the conservator or the receiver which actually holds" the funds, it could not resolve the case under Section 1821(d)(13)(D), since that provision would only bar claims against the receiver (as opposed to claims against the purchasing and assuming bank for which the RTC was merely conservator). *Id.* Thus, as in *Rosa*, the Third Circuit concluded that Section 1821(d)(13)(D) bars claims against a receiver, but not claims against a purchasing and assuming bank, such as JPMC, concerning assets that have passed out of receivership.

The Third Circuit adopted the same "literal[]" reading of Section 1821(d)(13)(D) in its subsequent decision in *Hudson*. 43 F.3d at 847 n. 10. The *Hudson* Court repeatedly invoked *Rosa* for the proposition that the jurisdictional bar under Section 1821(d)(13)(D)(i) "applied only to claims against failed institutions while [Section 1821(d)(13)(D)](ii) applied to claims against the failed institutions specified in (i) as well as to claims against the receiver of such institutions." *Id.*; *see also id.* at 852 ("[*Rosa*] held that claims against the receiver, as well as claims against the failed institution, were subject to the 'statutory exhaustion requirement' of administrative review"). When it denied JPMC's Motion to Dismiss (and when it denied JPMC's earlier Motion to Stay), the Bankruptcy Court adhered to the Third Circuit's holding in *Rosa* and *Gross*, as reaffirmed in *Hudson*, that the jurisdictional bar under FIRREA applies only to claims "against a receiver or an institution in receivership." (Tr. 6/24/09 (A415-16)); *see also* (Tr. 8/24/09 (A547-48).) This issue is fully settled in the Third Circuit.

In its previous filings making the same FIRREA argument (and there have been at least 7 such filings in the Bankruptcy Court and here), JPMC strained to distinguish *Rosa*.[6] In its present brief, JPMC does not bother to try. JPMC simply ignores the Third Circuit's decision, relegating it

---

[6]  JPMC first presented its FIRREA argument in its Brief in Support of the FDIC's Motion to Stay. (JPMC Adversary Proceeding, 09-50551 [D.I. 38].) It has since presented the same argument in briefing for its Motion to Dismiss the Counterclaims (JPMC Adversary Proceeding, 09-50551 [D.I. 42, 80]); its Motion to Withdraw the Reference (1:09-cv-00656-GMS [D.I. 2]); its Motion for Leave to Appeal from the Denial of the Motion to Stay (1:09-cv-00615-GMS [D.I. 2]); its Appeal from the Denial of the Motion to Stay (1:09-cv-00615-GMS [D.I. 22]); and its Motion for Leave to Appeal from the Denial of the Motion to Dismiss the Counterclaims (1:09-cv-00734-GMS [D.I. 2]). In each of these myriad filings, JPMC devoted paragraphs, sometimes pages, to trying to distinguish *Rosa*. In its most recent effort, its Reply in support of its Appeal from the Bankruptcy Court's Denial of the Motion to Stay, JPMC actually maintains that *Rosa* and *Hudson* "reinforce that the Bankruptcy Court's Orders should be reversed" by confirming the Third Circuit's "strict application of the plain language of FIRREA's jurisdictional bar." (1:09-cv-00615-GMS [D.I. 38, at 8].) JPMC does not explain how the *Rosa* Court's holding that the plain language of Section 1821(d)(13)(D) does not bar claims against a successor bank concerning assets not in receivership "reinforces" its position that such a claim should be barred here.

8

to a string cite and nowhere acknowledging that the Court specifically held that plaintiffs were entitled to pursue claims against a successor bank concerning assets that had passed out of receivership. (1:09-cv-00734-GMS [D.I. 23, at 12]). JPMC likewise fails to acknowledge the importance of the Third Circuit's decision in *Hudson*, relegating that case to a footnote and citing it for the proposition that Section 1821(d)(13)(D) must be read "literally," while conveniently ignoring that the "literal" reading that the Third Circuit adopted supports Debtors' view that the jurisdictional bar under Section 1821(d)(13)(D) applies only to claims against the receiver and not to claims against third party successor banks. (1:09-cv-00734-GMS [D.I. 23, at 12 n. 3]).

At the same time that it fails to address the settled law of the Third Circuit, JPMC scolds the Bankruptcy Court for "inexplicably ignor[ing]" a number of cases from outside this jurisdiction. (*Id.* at 12.) As Debtors have previously demonstrated, however, the cases that JPMC relies on are inapposite. The Sixth Circuit's decision in *Village of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373 (6th Cir. 2008), involved claims that, though ostensibly asserted against a successor bank, concerned deposits that remained in receivership (whereas no party contends that the assets at issue here remain in receivership). (1:09-cv-00615-GMS [D.I. 33, at 15-16]) JPMC also relies on *DiSibio v. Mission National Bank*, 127 Fed. Appx. 950 (9th Cir. 2005) in plain violation of the Ninth Circuit rule barring citation to the unpublished decisions of that court. U.S. Ct. of App. 9th Cir. Rule 36-3. In addition, as in *Oakwood*, and unlike here, the successor bank in *DiSibio* assumed "only certain, limited obligations," and plaintiffs' claims, though styled as claims against a successor bank, were actually claims for assets still in receivership. *Id.* at 951.[7]

---

[7]  JPMC also relies on *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259 (11th Cir. 1999), in which plaintiffs sued on a loan that the RTC had retained in receivership throughout the time in which plaintiffs were required to assert their claims under FIRREA's administrative claims process (unlike the assets in this case, which JPMC acquired well before Debtors timely brought suit). In *Trinsey v. K. Hovnanian at Upper Merion, Inc.*, 841 F. Supp. 694 (E.D. Pa. 1994), the

The overwhelming weight of authority relevant to the situation here, a situation involving claims against a successor bank for assets not in receivership, is in accord with the law of the Third Circuit and with the Bankruptcy Court's ruling. *See Henrichs v. Valley View Dev.*, 474 F.3d 609, 614 (9th Cir. 2007) (holding that FIRREA does not bar a state court adjudication of rights to distributed assets of a receivership bank, "the statute does not reach assignees of assets once owned by the FDIC"); *F.D.I.C. v. McFarland*, 243 F.3d 876, 887 n. 42 (5th Cir. 2001) ("It would be absurd for us to interpret Section 1821(d)(13)(D) as assignable to the current holder []. The claim procedures articulated in 12 U.S.C. 1821(d)(5)-(11) are predicated on the FDIC's possession of the property in question. When the FDIC relinquishes ownership, the procedures governing its role as a receiver no longer apply to the property. Thus, Section 1821(d)(13)(D) did not deprive the [] court of jurisdiction."); *Hoxeng v. Topeka Broadcomm, Inc.*, 911 F. Supp. 1323 (D. Kan. 1996) (holding that FIRREA did not bar lawsuit against FDIC's agent for tortiously interfering with contract to purchase property from the FDIC, since it was not a claim against the FDIC); *Team Bank v. Barfield*, 145 F.R.D. 69, 72 (N.D. Tex. 1992) (holding that the FDIC could not intervene to remove state court action by guarantors of notes against successor bank: "FDIC has no substantial interest in this action. No claim is being made against it."). It is settled in the Third Circuit, and in the Fifth and Ninth Circuits, that FIRREA does not bar claims against successor banks for assets not in receivership.

**B.**     JPMC Is Attempting To Misuse FIRREA To Secure An Advantage That Congress Never Intended

JPMC next makes the upside-down claim that Debtors are improperly "attacking" the FDIC simultaneously in two forums. (1:09-cv-00734-GMS [D.I. 23, at 14]). The opposite is true. Debtors

---

debtor sued to force the RTC, a co-defendant, to rescind the sale of certain property (whereas Debtors here are of course asserting claims, not against the FDIC, but against a third party). Finally, the decision in *American National Insurance Co. v. FDIC*, No. 3:09-cv-00044 (slip op.) was rendered in district court in Texas, where neither *Rosa*, *Gross*, nor *Hudson* are binding.

have asserted claims against the FDIC in one jurisdiction only (in the DC Action) and, as the Bankruptcy Court recognized, those claims – challenging the FDIC's denial of Debtors' claims against the receivership – are distinct from Debtors' claims against JPMC in the Adversary Proceedings. In fact, the only claims asserted against the FDIC in either Adversary Proceeding were asserted by JPMC. Furthermore, far from seeking to simultaneously pursue actions in multiple jurisdictions against the FDIC (or anyone else), Debtors moved to stay the DC Action to ensure that two courts would not be working at the same time to resolve claims involving the same assets. Though it depicts itself as promoting efficiency, JPMC opposed that motion (unsuccessfully), and it did so despite the DC Court's repeated admonition that it would be inefficient and "unseemly" to proceed as JPMC proposed.[8]   11/4/09 DC Court Hearing Tr. (A800).

JPMC also makes the backwards suggestion that it would somehow frustrate Congressional intent to permit Debtors to go forward with their claims against a private institution not in receivership. In fact, it is JPMC that is seeking to frustrate Congressional intent by expanding the reach of Section 1821(d)(13)(D) in such a way that would deprive Debtors of any meaningful recourse. JPMC's strategy becomes apparent when Section 1821(d)(13)(D) is understood in context. That provision works in tandem with Section 1821(d)(6), which provides for district court review, in specified jurisdictions, of claims "against a depository institution for which [the FDIC] has been appointed receiver." Section 1821(d)(13)(D), in turn, provides that no court shall have jurisdiction in FIRREA actions except as authorized under Section 1821(d)(6). Thus, Debtors could not file claims against JPMC pursuant to Section 1821(d)(6), since that provision is directed to claims

---

[8]      At the same time that it complains that Debtors are pursuing claims in multiple forums, JPMC ignores its own profligate filings. JPMC filed the very Adversary Proceeding that is now on appeal (which it claims is barred in its entirety by FIRREA); it filed proofs of claims in the Bankruptcy Court concerning the same assets; it filed a motion to intervene in the DC Action; and it filed counterclaims in the DC Action concerning the same assets that it put at issue before the Bankruptcy Court in its earlier-filed Adversary Proceeding.

against the bank in receivership, which means that, if JPMC is correct that Section 1821(d)(13)(D) applies more broadly to claims against third party successor banks, then Debtors would have no recourse on their claims against JPMC anywhere.[9]

JPMC's proposed application of FIRREA, whereby Section 1821(d)(13)(D) would apply to claims that could not otherwise be asserted under Section 1821(d)(6), would be "troubling from a Constitutional perspective" and contrary to the "goal of FIRREA." *Auction Co. of Am. v. F.D.I.C.*, 141 F.3d 1198, 1200 (D.C. Cir. 1998). The Third Circuit addressed this concern in *National Union Fire Ins. Co. v. City Sav., F.S.B.*, reasoning that it would constitute "an unconstitutional deprivation of due process," if Section 1821(d)(13)(D) were interpreted to bar claims "assert[ing] a right to payment," as Debtors assert here, that could not otherwise be asserted through the FIRREA administrative process. 28 F.3d 376, 391 (3d Cir. 1994). For Debtors, this danger is not speculative. In fact, the FDIC denied Debtors' claims submitted pursuant to the FIRREA administrative process on the basis that Debtors "fail to state claims against the receivership, they appear to assert claims against a third party." FDIC Notice of Disallowance (A70). Thus, JPMC is asking this Court to place Debtors in an untenable and Constitutionally suspect position – Debtors would not be permitted to assert their claims through the FIRREA administrative process because those claims are against a third party (*i.e.*, JPMC), but Debtors also would not be able to pursue an action against that third party because the underlying claims were not first asserted in the FIRREA administrative process. Even if the Third Circuit had not already rejected it in *Rosa*, this Court still should not adopt such a problematic statutory interpretation. *See INS v. St. Cyr*, 533 U.S. 289, 299-300 (2001)

---

[9]     JPMC responds to this concern in its reply in support of its Appeal from the Denial of the Stay Motions with the feeble suggestion that Debtors would suffer no prejudice if the Adversary Proceedings were dismissed since Debtors are proceeding in the DC Action, where both JPMC and the FDIC are parties. But Debtors have asserted claims in that action only against the FDIC, and, as explained in text, JPMC is pursuing an interpretation of FIRREA that would potentially enable it to dismiss any claims that might be asserted against it.

("[I]f an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is 'fairly possible,' we are obligated to construe the statute to avoid such problems.") (citation omitted).

Finally, JPMC calls the Bankruptcy Court's ruling "irrational" and "preposterous" insofar as it permits Debtors to "escape" the FIRREA process applicable to claims against the FDIC by filing suit directly against a successor bank.[10] (1:09-cv-00734-GMS [D.I. 23, at 13].) The only thing that would be "preposterous" would be for Debtors to be barred from asserting claims that it holds against a private third party merely because it has separately exercised its right under FIRREA to pursue distinct claims against the FDIC. JPMC is the party obligated on Debtors' deposits, the party in receipt of avoidable transfers, and the party exerting control over Debtor assets that were never transferred under the P&A Agreement. Debtors' claims against JPMC, including their avoidance claims authorized under the Bankruptcy Code, are simply not precluded by FIRREA. *See In re First Republicbank Corp.*, 1990 Bankr. LEXIS 2840 (Bankr. N.D. Tex. June 19, 1990) ("Congress can, but has not provided that Section 548 of the Bankruptcy Code not apply to FDIC bank assistance packages given under Section 13(c) of the Federal Deposit Insurance Act."); *cf. O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79 (1994) (holding that claims are not barred by FIRREA "except where some provision . . . provides otherwise. To create additional 'federal common-law' exceptions is not to 'supplement' this scheme, but to alter it.").

---

[10]   It is JPMC's construction of FIRREA, not Judge Walrath's, that leads to absurd results. If JPMC were correct that the only way that a party can assert claims involving assets that were once in receivership is to adhere to the FIRREA administrative process, it would be necessary for all bank depositors, upon seizure and receivership, to promptly file formal proofs of claim with the FDIC. Otherwise, such depositors would be left with no recourse if, months or years later, the successor bank denied them access to their funds. After all, the bank would be able to move to dismiss any claims under Section 1821(d)(13)(D) on the basis that the accounts had once been in receivership and the depositors had failed to exhaust the FIRREA claims process. Thus, JPMC's construction could literally entail millions of proofs of claim with the FDIC by individual depositors seeking to avoid this risk. That cannot be the intended application of FIRREA.

**III.**   The Bankruptcy Court Was Right To Retain Its Exclusive Jurisdiction Over the Adversary Proceedings

JPMC's position ultimately rests on the false premise that FIRREA creates the exclusive framework for any and all litigation that relates in any way to assets that were once in receivership. But this ignores that the Bankruptcy Court has "exclusive jurisdiction to deal with the property of the bankrupt estate." *Isaacs v. Hobbs Tie & Timber Co.*, 282 U.S. 734, 747 (1931); *see* 28 U.S.C. § 1334(e)(1). Thus, even in cases in which the FDIC, and not a purchasing and assuming bank, has claimed to own the disputed assets, bankruptcy courts have exercised jurisdiction to determine whether those assets were in fact estate assets, and therefore subject to the court's core bankruptcy jurisdiction, or receivership assets, and therefore governed by FIRREA. *See, e.g., In re Parker N. Am. Corp.*, 24 F.3d 1145, 1154 (9th Cir. 1994) (allowing preference action by debtor against RTC because the action is "in substance an action to determine whether the RTC actually has an asset rather than 'an action seeking a determination of rights with respect to the assets of a depository institution'") (quoting 12 U.S.C. § 1821(d)(13)(D)(i)); *In re All Seasons Kitchen, Inc.*, 145 B.R. 391, 396-97 (Bankr. D. Vt. 1992) (declining to bar debtor's claim attacking validity of FDIC's lien, "we must first determine whether an asset of FDIC is in fact at issue before we determine whether we have jurisdiction").

Here, there is no claim by anyone that the FDIC presently owns the assets underlying either Adversary Proceeding. Rather, the dispute is whether those assets belong to Debtors or JPMC, which is exactly why Debtors have filed this action against JPMC, a private bank not in receivership, as the Third Circuit authorized in *Rosa*. *Parker* and *All Seasons* further demonstrate that even if this case were different – even if the FDIC were claiming to own the assets at issue (thereby potentially implicating FIRREA) – the Bankruptcy Court would still rightly retain its core jurisdiction to determine in the first instance whether those assets actually belong to the estates. It is even more

clear that the Bankruptcy Court properly retained jurisdiction in the present situation, since Debtors are not suing the FDIC or seeking assets even arguably in receivership, but are instead fulfilling their traditional bankruptcy function by seeking to recover estate assets by pursuing claims against a private entity. By nevertheless seeking to shut down the Adversary Proceedings, JPMC is ignoring the Bankruptcy Court's unique and essential role in administering Debtors' estates, and it is seeking to manufacture a conflict between FIRREA and the Bankruptcy Code where none exists.

**IV.** **As JPMC Understood, At Least Until It Obtained An Unfavorable Result, The Bankruptcy Court Had Authority To Decide JPMC's Motion**

As its final argument for undoing the Bankruptcy Court's ruling, JPMC claims that the court was "without power" to enter a ruling on JPMC's Motion to Dismiss the Counterclaims. (1:09-cv-00734-GMS [D.I. 23, at 15]). As an initial matter, this argument is irrelevant: If JPMC were correct that the Bankruptcy Court did not have the authority to render a decision on JPMC's Motion to Dismiss Debtors' Counterclaims, Debtors' counterclaims would remain pending (just as they were before the Court issued its ruling). In any event, JPMC's theory that it stripped the Bankruptcy Court of jurisdiction in both Adversary Proceedings simply by filing its interlocutory appeal, on July 10, 2009, from the Order denying the Motion to Stay, is wrong.

**A.** **JPMC Cannot Unilaterally Divest the Bankruptcy Court of Jurisdiction by Filing A Faulty Interlocutory Appeal**

JPMC's argument that its appeal from the Denial of the Motion to Stay divested the Bankruptcy Court of jurisdiction over both adversary proceedings rests on a false explanation of the applicable legal standard. It is not true that a party to a litigation can unilaterally divest a trial court of jurisdiction simply by filing an appeal. (1:09-cv-00734-GMS [D.I. 23, at 15-17]). In fact, it is well settled that, where there is no jurisdictional basis for appeal, the lower court should proceed with the action before it. *See Mondrow v. Fountain House*, 867 F.2d 798, 800 (3d Cir. 1989) ("a premature notice of appeal does not divest the [trial] court of jurisdiction"); *U.S. v. Leppo*, 634 F.2d

15

101, 104-05 (3d Cir. 1980) (finding notice of appeal to be "manifestly ineffective" and order that trial court subsequently issued to be valid); *see also Venen v. Sweet*, 758 F.2d 117, 121 (3d Cir. 1985) ("the jurisdiction of the lower court to proceed in a cause is not lost by the taking of an appeal from an order or judgment which is not appealable . . . . An appeal from a non-appealable judgment or order is sometimes characterized as a 'nullity'."); *U.S. v. Hitchmon*, 602 F.2d 689, 694 (5th Cir. 1979) (en banc) ("[A] notice of appeal from a nonappealable order should not divest the district court of jurisdiction . . . . The contrary rule leaves the court powerless to prevent intentional dilatory tactics, forecloses without remedy the nonappealing party's right to continuing trial court jurisdiction, and inhibits the smooth and efficient functioning of the judicial process."); *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966) (*en banc*) (holding that trial court may "disregard" a faulty notice of appeal "and proceed with the case, knowing that it has not been deprived of jurisdiction.").

As the Third Circuit has explained, "a contrary conclusion would enable a litigant temporarily to deprive a [trial] court of jurisdiction at any non-critical or critical juncture including trial itself, thus bringing proceedings in the [trial] court to a standstill while a non-appealable ruling wends its way through the appellate process." *Venen*, 758 F.2d at 121; *see also Mondrow*, 867 F.2d at 800 (holding that a district court's decision to proceed during the pendency of an improper interlocutory appeal "has the salutary effect of avoiding delay at the trial level . . . . the district courts should continue to exercise their jurisdiction when faced with clearly premature notices of appeal."); *U.S. v. Sollenberger*, 2007 U.S. Dist. LEXIS 85627, at *4 (M.D. Pa. Nov. 20, 2007) ("the sole possible effect of the appeal, is to delay the trial in the above-captioned action").[11]   Thus,

---

[11]   The cases that JPMC cites do not depart from this common sense rule. Contrary to JPMC's mischaracterization, in *Griggs*, the Supreme Court found that the notice of appeal did *not* divest the district court of jurisdiction and observed that the district court was considering a pending motion to

though JPMC tries to avoid this issue, its appeal from the denial of its Motion to Stay could not have divested the Bankruptcy Court of jurisdiction over the Adversary Proceedings unless JPMC had proper jurisdictional grounds for filing that appeal.

**B.**     JPMC Has No Jurisdictional Basis For Its Interlocutory Appeals

For reasons that Debtors have fully set forth in their Oppositions to JPMC's Motions for Leave to Appeal the Denial of the Motion to Stay and the Denial of the Motion to Dismiss, there is no jurisdiction over JPMC's interlocutory appeals under 28 U.S.C. § 158(a)(1) or the collateral order doctrine. Section 158(a)(1) authorizes appeal only from "final judgment" – upon entry of an order that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Lauro Lines S.R.L. v. Chasser*, 490 U.S. 495, 497 (1989); *see also In re Truong*, 513 F.3d 91, 94 (3d Cir. 2008). Courts therefore routinely hold that the denial of a motion to dismiss, the identical ruling at issue here, is not a "final" appealable order. *See, e.g., Van Cauwenberghe v. Biard*, 486 U.S. 517, 527-30 (1988) (denial of a motion to dismiss for *forum non conveniens* not appealable); *Bell Atl.-Pa., Inc. v. Pa. Pub. Utility Comm'n*, 273 F.3d 337, 344 (3d Cir. 2001) (denial of a motion to dismiss on *res judicata* or limitations grounds not appealable); *In re Norvergence, Inc.*, No. 08-1910, 2008 WL 5136706, at * 1 (D.N.J. Dec. 5, 2008). The Adversary Proceedings are ongoing, there is no "final judgment" to appeal.

It is equally misguided for JPMC to invoke the collateral order doctrine, which provides only a narrow exception to the "general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Digital Equip. Corp. v. Desktop Direct, Inc.,* 511 U.S. 863, 868 (1994). Most obviously, the Bankruptcy Court's orders are fully reviewable upon final judgment in

---

alter or amend judgment which rendered the *appeal* "a nullity." *Griggs v. Provident Discount Co.*, 459 U.S. 56, 61 (1982). The Supreme Court concluded its point by citing with approval the decision in *Ruby*, 365 F.2d at 389, where the Ninth Circuit held that the notice of appeal from an unappealable order *does not divest* the district court of jurisdiction. *Griggs*, 459 U.S. at 59.

the Adversary Proceedings. The Supreme Court examined this requirement in *Lauro Lines* in which a defendant cruise ship operator sought to appeal an order denying its motion to dismiss an action in federal court in New York based on a forum selection clause requiring that all claims be brought in Italy. The Court held that immediate appeal was properly denied,

> If it is eventually decided that the District Court erred in allowing trial in this case to take place in New York, petitioner will have been put to unnecessary trouble and expense, and the value of its contractual right to the Italian forum will have been diminished. It is always true, however, that 'there is value . . . in triumphing before trial, rather than after it,' and this Court has declined to find the costs associated with unnecessary litigation to be enough to warrant allowing the immediate appeal of a pre-trial order.

*Lauro Lines*, 490 U.S. at 499. The Court also explained that "an entitlement to avoid suit is different in kind from an entitlement to be sued in a particular forum." *Id.* at 500. Like the plaintiff in *Lauro Lines*, JPMC has never claimed immunity from suit; rather, JPMC has claimed that it can be sued only in the DC District Court.[12] That is an argument that can be pressed on appeal from a final order, and it is not a proper subject for interlocutory appeal. *Id.*

Thus, as the Bankruptcy Court explained when it rejected JPMC's "Divestiture of Jurisdiction," *Lauro Lines* is dispositive and precludes JPMC's interlocutory appeal:

> It is clear that the appeal of the denial of a motion to dismiss or the denial of a motion to stay a proceeding is not appealable. The only exception to that that has been cited is the collateral order doctrine. The Supreme Court has made it clear that this is a narrow exception, and the Supreme Court held in *Lauro Lines* that it does not apply to issues of *where* a party can be sued as opposed to *whether* a party can be sued. . . . The fact that JPMC has continued to appear before me and to continue to proceed with this adversary for the past four months, I think evidences an

---

[12]    JPMC's Motion to Stay the JPMC Adversary Proceeding sought a transfer to the DC District Court. [09-50551 [D.I. 38]. In its present brief, JPMC complains again that the Bankruptcy Court asserted jurisdiction "over claims that Congress in FIRREA exclusively granted to a different court." (1:09-cv-00734-GMS [D.I. 23, at 13].) And repeatedly during oral argument, JPMC urged the Bankruptcy Court that the "preferable course" would be "to transfer [the Adversary Proceedings] to D.C." (*See* Tr. 6/24/09 (A382)); *see also* (A377-78) ("fundamentally, in filing the adversary proceeding, our first request, our fundamental request is that these issues should be resolved, to the extent they are disputed, by the Court in D.C. as part of FIRREA's process").)

acknowledgment that really their position is frivolous.  Need I say it, I do say it, the argument is frivolous that the collateral order doctrine applies.

(*See* Tr. 9/25/09 (A663-64) (emphasis added).)  Judge Walrath was right; JPMC has no basis for avoiding the final judgment rule, and, like all other litigants, JPMC must await final decision in the Adversary Proceedings before pursuing its appeals.[13]

**C.**   Even If There Were Jurisdiction Over JPMC's Appeals, The Bankruptcy Court Would Have Been Right To Proceed With The Adversary Proceedings

Even if there were a basis for jurisdiction over JPMC's appeals, the Bankruptcy Court would have been right to move forward with the Adversary Proceedings under the "frivolity exception" that JPMC acknowledges in its brief.  (1:09-cv-00734-GMS [D.I. 23, at 17]).  The Third Circuit has determined that, even where there is basis for interlocutory appeal, it remains within the trial court's discretion to proceed to the merits if it determines that the appeal is frivolous or dilatory.  *Leppo*, 634 F.2d at 104 (stating that divestiture of jurisdiction is "not based on statutory provisions or the rules of procedure.  Rather, it is a judge-made rule designed to avoid confusion or waste of time that might flow from putting the same issues before two courts at the same time . . . the rule should not be employed to defeat its purpose or to induce needless paper shuffling."); *see also Apostol v. Gallion*, 870 F.2d 1335, 1339 (7th Cir. 1989) ("We have no doubt . . . that defendants who play games with the district court's schedule forfeit their entitlement to a pre-trial appeal.").

As set forth in Section 1, *supra*, JPMC's appeal is frivolous as its arguments contradict the Third Circuit decisions in *Rosa* and *Hudson*.  JPMC's effort to "divest" the District Court of jurisdiction is also dilatory.  In a remarkable footnote, JPMC seeks to gloss over the inconvenient

---

[13]   The collateral order doctrine does not apply for the added reason that the Bankruptcy Court's denial of JPMC's motions did not rest on an "important" issue, *i.e.*, one that is "serious and unsettled."  *In re Ford Motor Co.*, 110 F.3d 954, 961 (3d Cir. 1997).  As discussed in Section I, supra, the Bankruptcy Court's decision was dictated by the Third Circuit's decisions in *Rosa*, *Gross* and *Hudson* that Section 1821(d)(13)(D) does not bar claims asserted against a successor bank concerning assets that are not in receivership.

fact that it made repeated applications to the Bankruptcy Court in the months after it filed its initial appeal, calling it "regrettable" that "the parties" did not "focus" on the divestiture issue and continued to litigate during that period.[14]   (1:09-cv-00734-GMS [D.I. 23, at 17 n. 4]).   This bland language cannot mask that JPMC, for months after it filed the appeal that supposedly divested the Bankruptcy Court of jurisdiction, continued to press its motion to dismiss Debtors' counterclaims, and concocted its "divestiture" argument only after the Bankruptcy Court ruled in Debtors' favor. The only thing that JPMC finds "regrettable" is that it lost on a meritless motion that it pursued, without any doubt as to the Bankruptcy Court's jurisdiction, long after it filed its first interlocutory appeal.   JPMC's strategy for undermining the Bankruptcy Court by attacking its authority even to issue a ruling – a ruling that JPMC invited by pressing its faulty Motion to Dismiss Debtors' Counterclaims even after it supposedly divested the court of jurisdiction – should not be vindicated here.

## CONCLUSION

For the reasons discussed, in the event the Court asserts jurisdiction over this appeal, Debtors respectfully request that the Court affirm the Bankruptcy Court's order denying JPMC's Motion to Dismiss Debtors' Counterclaims.

---

[14]   This is an understatement to say the least.   In the months after it filed its first interlocutory appeal, the filing by which it supposedly "divested" the Bankruptcy Court of jurisdiction over both Adversary Proceedings, JPMC actively participated in those proceedings in numerous respects. JPMC filed two briefs and a motion to strike in opposition to Debtors' summary judgment motion in the Turnover Action; JPMC deposed one of Debtors' employees in connection with that summary judgment motion; JPMC negotiated a protective order and discovery schedule with Debtors; JPMC served document requests on Debtors and third parties; JPMC filed an answer and counterclaims to Debtors' complaint in the Turnover Action; JPMC filed an opposition to Debtors' motion to dismiss JPMC's counterclaims in the Turnover Action; and JPMC scheduled and argued its Motion to Dismiss Debtors' Counterclaims.   Also, despite its current insistence that the Bankruptcy Court never should have considered its Motion to Dismiss Debtors' Counterclaims, JPMC continued to press that motion even after Debtors suggested in an email that JPMC withdraw its motion after the Bankruptcy Court denied the Motion to Stay.

Dated: March 1, 2010
       Wilmington, Delaware

**ELLIOTT GREENLEAF**

    */s/ Neil R. Lapinski*

**QUINN EMANUEL URQUHART**
**OLIVER & HEDGES, LLP**

Peter E. Calamari

Michael B. Carlinsky

Susheel Kirpalani

David Elsberg

51 Madison Avenue

New York, New York 10010

Telephone:  (212) 849-7000

Facsimile:  (212) 849-7100

Rafael X. Zahralddin-Aravena (DE Bar No. 4166)

Neil R. Lapinski (DE Bar No. 3645)

Shelley A. Kinsella (DE Bar No. 4023)

1105 North Market Street, Suite 1700

Wilmington, Delaware 19801

Telephone:  (302) 384-9400

Facsimile:  (302) 384-9399

Email:  rxza@elliottgreenleaf.com

Email:  nrl@elliottgreenleaf.com

Email:  sak@elliottgreenleaf.com

*Special Litigation and Conflicts Co-Counsel to*
*Washington Mutual, Inc. and WMI Investment Corp.*

21